544 P.2d 1116

**Tim JACKSON and Mary Jackson, his wife, Appellants,**

v.

**LOW COST AUTO PARTS, INC., an Arizona Corporation, Appellee.**

**No. I CA–CIV 2719.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 15, 1976.

**516**

Cavness & DeRose by Jack C. Cavness, Phoenix, for appellants.

Kenneth L. Abrams, P.C., Phoenix, for appellee.

## OPINION

FROEB, Judge.

Tim Jackson and Charles J. King each owned 40 percent of the stock in Low Cost Auto Parts, Inc., a retail auto parts business. They also were equal co-owners of two parcels of land on which they built stores and leased them to Low Cost. In March, 1973, Jackson and King became involved in a dispute which led to a suit by Jackson against Low Cost. Jackson now appeals from a judgment in favor of the corporation.

The first issue we review involves the right of one co-owner of real property to raise the rent without the consent of the other co-owner.

The two properties were owned by Jackson and King (with their wives), as tenants in common, each owning an undivided one-half interest in each parcel. A store suitable for operating an auto parts business was built on each of the two parcels. In 1972, Low Cost began occupancy of both buildings under verbal agreements for rent at $1062.50 per month for one, and $850 per month for the other. There was a conflict in the testimony whether the tenancy was month-to-month or for a term of ten years.

On April 17, 1973, Jackson sent written notice to Low Cost that the rent was being increased on the properties, without the consent of King. Low Cost thereafter refused to pay the increase and successfully defended against the claim in the trial court.

On appeal, Jackson argues that he was entitled to increase the rental for his share of the properties occupied by Low Cost. His theory is based on the contention that a verbal ten-year lease is not enforceable under the Statute of Frauds, and consequently the tenancy is from month-to-month.[1] He argues that he was entitled therefore to increase the rent for his share by giving ten days notice, as required by the month-to-month tenancy statute then in effect. Low Cost takes the position, which we find correct, that regardless of whether a ten-year or month-to-month lease is in effect, a co-owner cannot alter rent previously agreed upon without the consent of the other co-owner.

As a general rule, one co-owner may use and enjoy property owned in the form of tenancy-in-common as if he were the sole owner, provided his actions do not prejudice the use and enjoyment of the property by the other co-owner. See 4A Powell on Real Property, ¶ 602 at 607. It is also true that one co-owner may lease

---

1. The trial court made no findings as to this question; nor do we assume any, since it is not necessary to do so in resolving the appeal. Jackson argued it was unenforceable under the Statute of Frauds. A.R.S. § 44–101.

Low Cost argued Jackson was estopped to assert the Statute of Frauds. The *specific* issue was not expressly decided by the trial court.

the common property without· consent of the other co-owners to the extent of his interest, the effect of which is to confer on the lessee the right to share possession of the property with the other co-owners for the term of the lease. *Johnston v. DeLay,* 63 Nev. 1, 158 P.2d 547 (1945). Of course, his use cannot exclude other co-owners from enjoying their equal privileges, since to do so would be an "ouster." It follows then, that one co-owner may not grant a lease of the whole property which will bind other co-owners. *Monaghan v. Barnes,* 48 Ariz. 213, 61 P.2d 158 (1936).

■ A correlative of the latter rule is involved here. Where co-owners have agreed to lease the common property to a tenant at a certain rent, one of the co-owners may not raise or lower it without authorization from the other co-owners. *Needleman v. American Clothing Co., Inc.,* 115 Vt. 426, 63 A.2d 201 (1949) (as to raising it); *Morriss v. Finkelstein,* 145 S. W.2d 439 (1940) (as to lowering it). See also 86 C.J.S. *Tenancy in Common,* § 113c.

The facts in *Needleman* are very similar to this case. The Vermont Supreme Court held:

> The situation here presented is that of one co-tenant attempting to raise the rent of permises leased by him and his co-tenants without permission of the latter and, indeed, against the wishes of at least one of them. Inasmuch as the rent was fixed by the joint action of the co-tenants it must be altered by all of them concurring, either jointly or severally. A single co-tenant has no power, without the consent of the others, to change the amount of rent theretofore agreed upon by all of the co-tenants. [63 A.2d at 202]

Jackson relies on a contrary authority, *Most v. Passman,* 21 Cal.App.2d 729, 70 P. 2d 271 (1937), which we find is not persuasive.

We therefore affirm the judgment of the trial court denying to Jackson an increase in the rent for his share of the property. We leave undetermined, as did the trial court, the question of whether the lease was month-to-month or for ten years. Unless the co-owners can agree as to this and other issues which arise out of co-ownership of · the property, partition of their interests may be necessary.

■ The second issue for review is whether $12,000 transferred by Jackson to Low Cost represented a loan or investment in stock of the corporation. As to this, the evidence was in sharp dispute. The trial court determined that Jackson failed to prove his claim by a preponderance of the evidence. As there is substantial evidence refuting the contention that the $12,000 was a loan, we will not weigh the evidence and substitute our view for that of the trial court. *Decker v. Ramenofsky,* 91 Ariz. 97, 370 P.2d 258 (1962).

The last issue raised by appellant deals with the propriety of the order by which the trial court ultimately ruled on the case. After the case had been tried, the issues were taken under advisement. On December 21, 1973, the trial judge entered a minute entry order dismissing the case without prejudice to a later determination of the issues in a partition action. No written order or judgment was entered. On January 15, 1974, the trial judge entered a minute entry order, apparently sua sponte, which reads as follows:

> IT IS ORDERED nunc pro tunc amending Minute Order dated December 21, 1973, to read:
>
> The Plaintiff having failed to prove his case by preponderance of the evidence, therefore;
>
> IT IS ORDERED that Defendant have judgment against the Plaintiff with costs.

Thereafter, a formal written judgment in accordance with the January 15, 1974 minute order was entered and this appeal followed.

Appellant argues that the January 15, 1974 order was entered without following the provisions of Rule 58(a), Rules of Civil Procedure, and was therefore invalid.

**518**

The portion of the rule referred to by appellant states that a court may enter a judgment nunc pro tunc " . . . in such circumstances and on such notice as justice may require . . . and the reasons for such direction shall be entered of record." Since the trial court neither gave notice nor set forth its reasons, appellant contends it was invalid and should be vacated.

■ We find Rule 58(a) inapplicable in this instance, notwithstanding the use by the trial court of the words "nunc pro tunc." In the first place, what was amended was a minute entry order, not a judgment. Secondly, the order of January 15, 1974 did not purport to have any retroactive effect as it merely amended a previous minute entry order. Its effect was prospective. Thus, we find the use of the words "nunc pro tunc" by the trial court to have been inappropriate and not determinative of the question whether Rule 58(a) was brought into operation. We hold that the January 15, 1974 order was not affected by Rule 58(a) and was validly entered without other formalities.

Judgment affirmed.

DONOFRIO, P. J., and OGG, J., concur.